JONES *v.* CITY OF LANSING.

1. APPEAL AND ERROR—AUTOMOBILES—MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—SAFETY ISLAND—NEGLIGENCE.

Claimed errors arising out of trial judge's rulings as to evidence and his charge to jury as well as his denial of plaintiff's motion for directed verdict in action by infant guest passenger of a motorist against city for injuries sustained as result of alleged negligent construction and maintenance of safety island for pedestrians and users of street car service *held*, not prejudicial, where testimony showed as matter of law city was not negligent in either the construction or maintenance of the safety island.

2. Municipal Corporations — Highways and Streets — Safety Islands—Construction—Negligence.

Construction of safety island alongside street car track in center of street and consisting of narrow platform slightly higher than adjacent pavement at end of which was erected a solid concrete block several feet high with red light atop thereof, *held*, not only a convenience for pedestrians but a necessity for persons using street car service.

3. Same—Automobiles—Safety Islands—Maintenance—Negligence.

Negligence of city in maintenance of safety island for pedestrians and users of street car service *held*, not established by showing that red bulb atop concrete block at end of island was unlighted during evening when car in which plaintiff's ward was riding collided with said block where street was otherwise well illuminated by other street lights and safety island could be readily seen a block away.

4. Same—Notice of Defective Condition of Street—Repairs.

While written notice to city of defective condition of highway is not required, if person who sustains injury because of an alleged defect makes no showing whatsoever that the city had either actual or constructive notice thereof, or in case it had been given, that a reasonable time had elapsed in which to make repairs, recovery may not be permitted (1 Comp. Laws 1929, § 4229).

5. Same—Notice of Defective Condition of Street—Patrolmen.

Notice to patrolman of defective condition of street within city is not notice to city thereof since he is not a highway officer, but even if it were, city is entitled to reasonable time thereafter in which to remedy defect (1 Comp. Laws 1929, § 4229).

6. Same—Maintenance of Streets—Automobiles—Safety Islands.

Evidence *held*, to show city had observed its duty to maintain street in reasonably safe condition in case brought to recover damages for injury to plaintiff, a minor, when car in which she was riding collided with cement post at end of safety island (1 Comp. Laws 1929, § 4223 *et seq.*).

Appeal from Ingham; Collingwood (Charles B.), J. Submitted October 9, 1925. (Docket No. 25, Calendar No. 38,459.) Decided December 10, 1935.

Case by Arthur L. Jones, guardian of Beverly Hazel Jones, a minor, against City of Lansing, a municipal corporation, for personal injuries sustained by plaintiff's ward when automobile collided with a safety island. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Tuttle & Tuttle,* for plaintiff.

*Joseph W. Planck,* City Attorney, for defendant.

BUTZEL, J. On Sunday evening about 9:30, April 12, 1931, Arthur L. Jones, accompanied by his six-year old daughter, Beverly Hazel Jones, and others, was returning to his home at Three Rivers, Michigan. He was driving in a westerly direction on East Michigan avenue in the city of Lansing, when he approached the railroad tracks of the Pere Marquette and Michigan Central railroads running north and south across East Michigan avenue at right angles. For the convenience and safety of pedestrians and particularly the general public who use street car service, the city of Lansing had erected a safety island or loading dock almost abutting the north side of the street car track in the center of East Michigan avenue and a short distance west of the railroad tracks. The platform of the safety island was 6 feet wide and 40 feet long and extended two inches above the pavement at one end, but tapered down towards the other where it became flush with the street. At the easterly end of the platform there had been erected a cement block 24 inches square which, with a pyramidical cap surmounting it, was approximately 33 inches in height. There was also attached to the top of the cement block a red globe properly protected and nine inches in height. This was part of the city's lighting sys-

tem, the globe being lighted at the same time the other street lights were, and in charge of the city lighting commission. At the time Jones drove across the railroad tracks, he claims the traffic was heavy, though this is disputed. Jones claims he proceeded at the rate of 20 miles per hour across the tracks behind another car which suddenly turned to the right and off the line of traffic. Almost immediately thereafter his car collided with the concrete post, the lighting bulb of which was not burning at the time. The impact must have been very great as the steering wheel of the car was broken, the radiator bent, a tire burst and a fender of the car locked to the top of the cement block. The front and rear seats of the car were jammed together. Jones' fellow passengers were all seriously injured, his daughter Beverly Hazel faring the worst. Jones, as her guardian, brought suit against the city of Lansing, claiming it was negligent in both the construction and maintenance of this safety island. The jury rendered a verdict of no cause of action.

Numerous errors are alleged arising out of the trial judge's rulings and his charge to the jury as well as his denial of the plaintiff's motion for a directed verdict. Even if the errors claimed were of any merit, they were not prejudicial inasmuch as the testimony showed that, as a matter of law, the city was not negligent in either the construction or the maintenance of the safety island. There can be no question that such a safety island has become more than a convenience for pedestrians who cross the street during heavy traffic and an absolute necessity for street car passengers by providing them with a safe place to get on and off the cars and also to await their arrival. Plaintiff showed that where the safety island is located, Michigan avenue was

76 feet in width and the parking of cars was not permitted between the platform and the curb. There was but a single track in the middle. of the street at the particular point. There was no testimony given that showed that there was negligence in the position or size of the loading dock. On the contrary, it was a necessary and proper protection for the public. Its advantages so greatly outweighed any possible disadvantages that there can be no question that its construction was necessary and proper. *City of Jacksonville* v. *Bell,* 93 Fla. 936 (112 South. 885, 53 A. L. R. 163); *District of Columbia* v. *Manning,* 57 App. D. C. 156 (18 Fed. [2d] 806, 53 A. L. R. 167). Also, see 53 A. L. R. 170.

Plaintiff further failed to establish that the maintenance of the island was negligent. He showed that the red bulb inserted on the top of the concrete block was unlighted at the time of the accident, that a bulb will burn out in the course of time and must be replaced. It was shown by defendant, however, that Michigan avenue is an exceedingly well illuminated street with boulevard lights on each side, each fixture being equipped with two bulbs each of 1,000 candle power. The lamps are spaced approximately 150 feet apart. Testimony further showed that the loading dock could be readily seen at night without any red light or any other illumination other than the street lights and that in the month of April, 1931, the dock could have been seen a block away by anyone looking towards it provided the vision was not cut off by cars. The testimony further showed that the witness standing where the loading dock was situated could read the fine print of a newspaper with the assistance of the light from the regular street lighting system, and without that of the bulb in the concrete post and that this was the condition

on the night of the accident, though allowance must be made for any slight variance that might exist on account of the age of the bulbs used in the street lamps. However, even were the loading dock and cement block not plainly discernible without the additional red globe being lighted, there is no showing whatsoever that the city had either actual or constructive notice of the defect or, even if notice had been given, was there reasonable time in which to make the repairs. No written notice is necessary but there must be either actual or constructive notice of the defective condition of the highway. 1 Comp. Laws 1929, § 4229. It was shown that the lighting of the city was looked after by the Board of Water & Electric Light Commissioners and that a special man is employed to watch the lights during the night and that he had driven by the loading dock at 7:30 that evening and the red light was burning. A witness for the plaintiff testified that about that time he noticed the light was out, and another stated in a very unpositive manner that it *seemed* to him that it was out the previous night. While it is true that a city policeman discovered that the light was out just immediately prior to the accident, defendant calls attention to the case of *Corey* v. *City of Ann Arbor,* 134 Mich. 376, in which it was held that notice to a city patrolman of icy sidewalks was not notice to the city, since this patrolman was not a highway officer upon whom rested the responsibility for their condition. However, even if this notice to the policeman in the instant case were held to be notice to the city, the city is entitled to reasonable time thereafter in which to remedy the defect. See 1 Comp. Laws 1929, § 4228; *Fulton Iron & Engine Works* v. *Township of Kimball,* 52 Mich. 146. It is clear that there was insufficient time in which to make the repairs.

The duty of the city to keep its streets in reasonably safe condition (1 Comp. Laws 1929, § 4223 *et seq.*) was observed in the instant case.

Judgment for defendant is affirmed, with costs.

POTTER, C. J., and TOY, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.