PETERS v DEPARTMENT OF STATE HIGHWAYS

Docket No. 56857. Argued May 5, 1976 (Calendar No. 16).—Decided
    May 2, 1977.

Plaintiff Cecilia E. Peters, administratrix of the estate of Edward
    V. Peters, deceased, brought an action for wrongful death
    against the State of Michigan and Charles H. Hewitt, Chair-
    man of the State Highway Commission, in the Court of Claims,
    on a theory of negligent design, construction or maintenance of
    a highway. Peters was a passenger in a car driven by James
    Misukiewicz on the Edsel Ford Expressway which was flooded
    after a heavy rainstorm. The driver lost control of the car
    while attempting to avoid floodwater and a disabled vehicle,
    and his car was struck broadside by a truck. Peters was killed
    and the driver was injured. The Court of Claims, Mark S.
    Andrews, J., found that the highway drainage system was
    inadequate due to a design and construction defect, but granted
    judgment for the defendant State of Michigan on the ground
    that the Department of State Highways did not have actual or
    constructive notice of the defect. The Court of Appeals, Bash-
    ara, P. J., and R. B. Burns and Kelly, JJ., affirmed per curiam
    (Docket Nos. 18766, 19399). Plaintiff appeals. *Held:*

    1. The state's liability for defective highways is an express
    exception to the general scheme of sovereign immunity created
    by statute. The conditions precedent to establishing the state's
    liability are questions for the Legislature and it is not the
    proper function of the Supreme Court to limit or enlarge clear
    statutory provisions by construction.

    2. A plaintiff must show that the state knew, or in the
    exercise of reasonable diligence should have known, of the
    defect in design or construction of the highway and had a
    reasonable time to repair it before the injury occurred to hold
    the state liable under the governmental tort liability statute.

REFERENCES FOR POINTS IN HEADNOTES
[1] 39 Am Jur 2d, Highways, Streets and Bridges §§ 412, 546, 547.
[2] 39 Am Jur 2d, Highways, Streets and Bridges §§ 103 *et seq.,* 1703
    *et seq.*
[3–5] 39 Am Jur 2d, Highways, Streets and Bridges §§ 114–116, 352,
    411 *et seq.*

3. If the state knew, or should have known, of the defective nature of the drainage system, that would be sufficient notice for liability to attach even in the absence of knowledge of flooding at the specific site of the injury.

4. The record in this case contains evidence that the defendant was in possession of sufficient knowledge to give rise to a question of fact whether defendant knew or should have known that the highway drainage system was inadequately designed or constructed to handle a not unusual rainfall. Employees of the Wayne County Road Commission, which maintains the highway, had knowledge well before the plaintiff's injury that ponding sometimes occurred at the site of the accident. The state had local climatological information, including statistics on rainfall over a period of years, and used it in designing the drainage system. The rainfall on the date of the injury was not unprecedented or unusual. It would be possible to conclude that under these circumstances, if the state had exercised reasonable diligence in analyzing the data, it would have known that the drains were inadequate to handle a not unusual rainfall. The trial court' erred in finding no evidence of actual or constructive notice of the defect.

Reversed and remanded for a new trial.

1. HIGHWAYS—FAULTY MAINTENANCE—NOTICE.

A plaintiff in a case arising from faulty maintenance of a highway before enactment of the governmental tort liability act was required by case law to show that the defendant governing body had notice, actual or constructive, of the defect, and a reasonable time to repair it prior to the injury; however, when the defect was the result of actions by the defendant or its agents, proof of notice and time to repair was not necessary.

2. STATES—SOVEREIGN IMMUNITY—HIGHWAYS—STATUTES.

The state's liability for defective highways is an express exception to the general scheme of sovereign immunity created by statute; the conditions precedent to establishing the state's liability are questions for the Legislature and it is not the proper function of the Supreme Court to limit or enlarge clear statutory provisions by construction (MCL 691.1403; MSA 3.996[103]).

3. HIGHWAYS—DEFECTIVE DESIGN—NOTICE.

A plaintiff must show that the state knew, or in the exercise of reasonable diligence should have known, of a defect in design or construction of the highway and had a reasonable time to repair it before the injury occurred to hold the state liable for

the defect under the governmental tort liability statute (MCL 691.1403; MSA 3.996[103]).

4. Highways—Defective Design—Notice—Drainage System.

 Sufficient notice for liability to attach to the state for a defective highway drainage system is shown if the state knew, or should have known, of the defective nature of the drainage system, even in the absence of knowledge of flooding at the specific site of the injury (MCL 691.1403; MSA 3.996[103]).

5. Highways—Defective Design—Defective Construction—Notice —Drainage System.

 Evidence of the state highway department's constructive knowledge of the defective nature of a state highway drainage system was sufficient to raise a question of fact where the plaintiff showed that employees of the county road commission which maintained the highway knew that ponding sometimes occurred at the site of the plaintiff's injury, that the state had local climatological information including statistics on rainfall over a period of years and used it in designing the drainage system, and that the rainfall on the date of the injury was not unprecedented or unusual (MCL 691.1403; MSA 3:996[103]).

*Harvey, Kruse & Weston, P. C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Myron A. McMillan,* Assistants Attorney General, for defendants.

Ryan, J. At approximately 4:15 a.m. on June 18, 1970, James R. Misukiewicz was driving to work on westbound I-94 in the City of Detroit. Edward V. Peters was a passenger going to the same place of employment. As the Misukiewicz car passed under the Mt. Elliott overpass where the expressway curves to the right, Mr. Misukiewicz noticed a vehicle stopped to the right of the expressway and people standing around it. Mr. Misukiewicz switched from the extreme right lane to the center traffic lane. At that moment the Misukiewicz car encountered a body of water which covered the

north half of the westbound roadway at a depth of up to 10 or 12 inches. Mr. Misukiewicz lost control of his vehicle which went into a skid and stopped in the center westbound lane facing north. The Misukiewicz car was immediately struck broadside by a westbound truck. Mr. Peters was killed and Mr. Misukiewicz was seriously injured.

Cecilia Peters, administratrix of the estate of deceased Edward Peters, and Mr. and Mrs. Misukiewicz commenced an action against the state alleging that the state's failure to design, construct and/or maintain the highway in a proper manner created a dangerous condition which was the proximate cause of plaintiffs' injuries.[1]

At trial before the Court of Claims it was established that the State of Michigan was responsible for the design, construction and maintenance of

---

[1] MCLA 691.1402; MSA 3.996(102) provides:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21, chapter 4 of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Compiled Laws of 1948. The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel. No action shall be brought against the state under this section except for injury or loss suffered on or after July 1, 1965. Any judgment against the state based on a claim arising under this section from acts or omissions of the state highway department shall be payable only from restricted funds appropriated to the state highway department or funds provided by its insurer."

It has long been held that similarly worded predecessor statutes provided for liability for injuries due to defective design, *Malloy v Walker Twp,* 77 Mich 448; 43 NW 1012 (1889), or defective construction, *Carver v Detroit & Saline Plank Road Co,* 61 Mich 584; 28 NW 721 (1886).

the highway, and that the state contracted with the Wayne County Road Commission to maintain the highway within Wayne County. Shortly after 4 a.m. on the morning of the accident, a short but intense rainfall occurred in the Mt. Elliott area. The rainfall was not unprecedented or unusual. The Misukiewicz vehicle did not pass any warning signs or caution lights before it struck the accumulated water just west of the Mt. Elliott interchange.

There was testimony from residents of the Mt. Elliott interchange area that similar flooding had occurred in the past, had occasionally resulted in traffic jams, accidents and stall-outs, and that Detroit police officers aided drivers during those flooding conditions. None of the area residents testifying had notified the County Road Commission or defendant State Highway Department of what they had observed.

The trial court made certain findings of fact, including the following:

First, that while there was no direct evidence as to what caused the water to accumulate, "[u]pon this record I am satisfied that the flooding in question occurred because the drainage system was not adequate to accommodate the rain which fell before the accident". The court concluded that the "inadequacy of the drainage system must be considered a defect in the highway at the location in question since the record supports the view that the rainfall that morning was not unprecedented". Defendant-appellee does not challenge the finding of a defect in the drainage system.

Second, that the flooding was not due to any neglect in maintenance.

Third, that "there is no evidence from which this court can properly conclude that the highway

authorities knew of this condition or 'in the exercise of reasonable diligence should have known' of it * * * ''. Thus the court found that plaintiff had not shown the actual or constructive notice of the defect and reasonable time to repair required by MCLA 691.1403; MSA 3.996(103).[2] The trial court concluded that plaintiffs had failed to prove liability.

The Court of Appeals affirmed in a per curiam opinion. We granted leave to appeal. 394 Mich 815 (1975). We reverse and remand for a new trial.

## I

The first issue on appeal deals with the meaning and application of the statutory provisions which establish the liability of municipal corporations, political subdivisions, and the state for injuries due to defective highways.[3]

Plaintiff argues that the lower courts erred in concluding that MCLA 691.1403; MSA 3.996(103) requires plaintiff to show that defendant had actual or constructive notice of the design or construction defect which caused the injury and reasonable time to repair it before the injury occurred, since the state itself was responsible both for the design of the highway and its construction.

Historically the rule in Michigan has been that in the case of faulty *maintenance,* plaintiff was

[2] MCLA 691.1403; MSA 3.996(103) provides:

"No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place."

[3] MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq. See* especially the sections quoted in footnotes 1 and 2.

required to show that the defendant governing body had notice, actual or constructive, of the defect and a reasonable time to repair it prior to the injury. *Burgdorf v Holme-Shaw,* 356 Mich 45; 96 NW2d 164 (1959), *Jones v Lansing,* 273 Mich 623; 263 NW 757 (1935). However, when the defect was the result of actions by the defendant or its agents, proof of notice and time to repair was not necessary. *Nevala v Ironwood,* 232 Mich 316; 205 NW 93 (1925).

The Legislature altered this rule by enacting 1964 PA 170.[4] The act's title plainly states the legislative intent:

"AN ACT to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in a governmental function, for injuries to property and persons caused by negligence; *to define and limit such liability* * * * ." (Emphasis added.)[5]

Section three of the act provides:

"No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place."[6]

---

[4] MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.*

[5] The title was amended by 1970 PA 155 to deal with a government's liability "when engaged in the exercise or discharge of a governmental function" and to omit the reference to "injuries * * * caused by negligence", in order to rectify the problems this Court described in *Maki v East Tawas,* 385 Mich 151; 188 NW2d 593 (1971).

[6] MCLA 691.1403; MSA 3.996(103).

The statute does not confine the notice requirement to cases in which the government's liability is predicated upon negligent maintenance. No mention is made of any exception to the notice and time to repair requirement in the case of design or construction defects.[7] The state's liability for defective highways is an express exception to the general sovereign immunity scheme created by statute.[8] *Myers v Genesee County Auditor,* 375 Mich 1; 133 NW2d 190 (1965), *McDowell v State Highway Comm'r,* 365 Mich 268; 112 NW2d 491 (1961). While it might seem eminently fair to excuse a claimant from proving that the state knew or ought to have known of a defect for which it is responsible, the conditions precedent to establishing the state's liability are questions for the Legislature and it is not the proper function of this Court to limit or to enlarge clear statutory provisions by construction. *McDowell v State Highway Comm'r, supra.*

We therefore hold, as the Legislature commanded, that the plaintiff must show that the state knew, or in the exercise of reasonable diligence should have known, of the defect in the design or construction of the highway and had a reasonable time to repair it before the injury occurred to hold the state liable under MCLA 691.1403; MSA 3.996(103).

---

[7] Compare 1948 CL 242.6, *repealed by* 1964 PA 170, § 14; MCLA 691.1414; MSA 3.996(114):

"If said public highway, street, bridge, sidewalk, crosswalk or culvert is in a condition which is not reasonably safe and fit for travel either by persons, animals or vehicles, because of defects in the original construction, *then it shall not be necessary to show that any notice thereof was brought to the attention of such township, village or city,* before a recovery can be had. If the defect is caused by said highway, street, bridge, sidewalk, crosswalk or culvert becoming out of repair, it shall be conclusively presumed that the township, village or city had notice thereof and a reasonable time in which to repair the same, provided said defect has existed for a period of 30 days or longer." (Emphasis added).

[8] MCLA 691.1407; MSA 3.996(107).

## II

Appellant asserts that the trial court committed reversible error when it found that "there is *no evidence* from which this court can properly conclude that the highway authorities knew of this condition or 'in the exercise of reasonable diligence should have known' of it". (Emphasis added.) We agree. There were two categories of evidence which could properly support an inference that the defendant knew or should have known of the defective drainage system.

Initially it should be made clear that the duty of the defendant is to keep the highway in a condition reasonably safe and fit for travel. The accumulated water west of the Mt. Elliott interchange was an indication of a breach of this duty. The cause of the flooded condition was found by the Court of Claims to be an inadequate drainage system. After finding that the inadequate drainage system constituted a defect, the trial court addressed the issue of notice and concluded:

"Under 1964 PA 170 the state is not liable for the flooding caused by the inadequate drainage system at the Mt. Elliott interchange because there is *no evidence* from which this court can properly conclude that the highway authorities knew of *this condition* or 'in the exercise of reasonable diligence should have known' of it, or that the condition was one to which the [statutory] presumption of knowledge applies." (Emphasis added.)[9]

The Court of Appeals affirmed the trial court, stating:

---

[9] It is important to note that the trial court did not say he was unpersuaded by the evidence before him that the state had the requisite notice, but that there was "no evidence" of such notice.

"[T]he evidence does not disclose the trial judge's decision was clearly erroneous. His finding that the state or its agent, the Wayne County Road Commission, had neither actual or constructive knowledge of the *intermittent flooding in the area* of the accident must be sustained." (Emphasis added.)

It is not clear whether the trial court believed the plaintiff must prove that defendant had the statutorily required knowledge of the defective drainage system or of the flooding, or both. Apparently the Court of Appeals believed that actual or constructive knowledge of the flooding itself was required. That is not the law.

Actual or constructive knowledge that flooding was occurring would certainly be sufficient notice under the statute. However, knowledge of flooding is not the only source of notice which could satisfy the statute. Clearly, if the state knew, or should have known, of the defective nature of the drainage system, that would be sufficient notice for liability to attach even in the absence of knowledge of flooding at the specific site of the accident.

An examination of the transcript reveals that there was evidence tending to show that employees of the Wayne County Road Commission knew that ponding sometimes occurred at the site in question well before the time of this accident.[10] Such knowledge on the part of the agency contrac-

---

[10] Mrs. Carol A. Miloser lived near the site of the accident and testified via a deposition taken in September of 1972 to having seen flooding at the site in question approximately three times a year from 1964 until the accident at issue. She further testified:

"*Q:* At any time had you ever observed anyone making any efforts to either pump or correct the flooding situation?

"*A:* One time I did see that.

"*Q:* And do you recall approximately when that would have been at all?

"*A:* What year?

"*Q:* Yes.

tually obligated to maintain the highway for the state would be imputed to the state. See *Corey v Ann Arbor,* 134 Mich 376; 96 NW 477 (1903). See, generally, *Westinghouse Electric & Mfg Co v Hubert,* 175 Mich 568; 141 NW 600 (1913).

In *Converse v Blumrich,* 14 Mich 109, 120 (1866), Justice Cooley stated the elementary concept of constructive or inquiry notice.

"A person is chargeable with constructive notice where, having the means of knowledge, he does not use them. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained." (Citations omitted.)

The record in this case contains evidence that the defendant was in possession of sufficient knowledge to give rise to a question of fact

---

"*A:* Oh, my goodness, no. It's been quite a while ago. I'd say maybe five or six years ago.

"*Q:* And what did you observe at that time?

"*A:* They were cleaning out the sewers.

"*Q:* Do you know whether or not these persons were from the county, the city or the state at all?

"*A:* They were from the county, I believe, because it was an orange truck."

Later she continued:

"*Q:* You say you saw somebody out there cleaning this roadway; cleaning the sewers, in what year?

"*A:* I didn't say the year. I don't remember the year.

"*Q:* About how many years ago was it?

"*A:* I'd say about five, six years ago, approximately. I can't really tell you the exact year but they were out there cleaning it.

"*Q:* Five or six years ago?

"*A:* Could be that, maybe less, maybe more. I don't remember, but *I only observed them once while it flooded. After the flood they were all out there.*

"*Q:* Did that seem to take care of it?

"*A:* No."

whether defendant knew or should have known that the highway drainage system was inadequately designed or constructed.

There is a second category of evidence which raises a question of fact whether defendant knew or should have known of the inadequate drainage system. The trial court did not specifically find whether the inadequacy was due to defective design or to defective construction, or to both. In this case, however, there was evidence from which a trier of fact could infer that the defendant knew or should have known of the defect whether it was in design or construction.

The testimony of Mr. Groomer, employed by the Department of State Highways as a design-supervising engineer and also as the state drainage engineer, showed that the state was in possession of local climatological information which contained the statistics on rainfall over a period of years,[11] and that the highway department made

---

[11] On cross-examination Mr. Groomer testified as follows:

"*Q:* Mr. Groomer, am I correct that in your capacity you are familiar with the planning and designing of drainage systems for expressways in Michigan?

"*A:* Yes.

"*Q:* And am I also correct that the planning and designing of drainage systems for expressways must consider the amount of rainfall that takes place in the general area involved?

"*A:* Yes.

"*Q:* And am I also correct that the reason for the extensive number of catch basins that you refer to was because the designers and planners were aware that in Michigan, and particularly in that area, that it would have a considerable amount of rainfall?

"*A:* I don't know.

"*Q:* They do consider—they have the weather information available?

"*A:* If I may answer the question in my own words, the design is compatible with the criteria at that particular area.

"*Q:* Let me ask you this: When they design and plan a drainage system they have available the weather information as to how much rain the State of Michigan has—in a certain area has, isn't that correct?

"*A:* That's correct.

"*Q:* So isn't—what I'm saying is that when these drains and catch

use of these statistics in designing the drainage system.[12]

Based on the testimony of the National Weather

basins were put in they were put in with knowledge of what the weather conditions are in Michigan for a certain period of time?

"*A:* That is correct."

\* \* \*

"*Q:* And also when a system is designed for collection of water there is a safety factor taken into consideration as to the amount of rainfall—isn't there?—so the point being that you don't plan on the minimum amount of rainfall when it is planned for the amount of water from rainfall it is planned so that there would be a safety factor, so that if there is more than a minimal amount—

"*A: (interposing):* We never design for a minimal amount.

"*Q:* So there is a safety factor taken into consideration for the amount of rainfall, isn't that true?

"*A:* It is a design criteria which is not classified as a safety factor, but you could well relate to it in that manner.

"*Q:* For example, if they look at the maximum amount of rainfall in any period of time in this area, for Michigan, they would even plan on the maximum and even plan on it possibly being more than that, wouldn't they?

"*A:* Not necessarily.

"*Q:* Do you know what, in fact, was planned in regard to the rainfall for this area?

"*A:* Yes, it is designed on the basis of a ten-year frequency.

"*Q:* So they would look over a period of ten years?

"*A:* That's correct.

"*Q:* And they would look—in that ten-year period the maximum amount of rainfall would be considered?

"*A:* Yes, that would be considered."

[12] On redirect Mr. Groomer testified as follows:

"*Q:* Mr. Groomer, will the—in a system such as this gravity drainage system does the intensity of rain at any given point in time have a relevancy as to how fast a road will drain?

"*A:* Yes, the capacity of the system is directly related to intensity."

\* \* \*

"*Q:* Is it possible to determine, by engineering ability, to foresee rain intensities projected for years in advance?

"*A:* Yes, we have information, the charts, the plotting, as testimony here has indicated, and we rely on that information.

"*Q:* And in designing this highway here did the highway department utilize those—that information?

"*A:* Yes, they did.

"*Q:* Is it possible to take care of every contingency, rainfall contingency, by design, within the realm of reason?

"*A:* Yes."

Service climatologist for Michigan, the trial court found that the rainfall on June 18, 1970 was not unprecedented or even unusual.

Under these circumstances, it would be possible to conclude that if the state had exercised reasonable diligence in analyzing its own data, it would have known of the existence of a defect in the design—*i.e.,* the drains were inadequate to handle a not unusual rainfall and, therefore, the state had the notice required by MCLA 691.1403; MSA 3.996(103).

If the design itself is not defective but the construction was defective in not following the design, the state could likewise be held to have notice. In that case it would be possible to conclude that the state ought, in the exercise of reasonable diligence, to know of deviations in the construction of highway systems from the design plans.

The instant case is to be distinguished from *Thomas v Flint,* 123 Mich 10, 38; 81 NW 936 (1900). *Thomas* dealt with a *maintenance defect* as opposed to a design or construction defect which existed from the beginning of the highway and was the direct result of defendant's activity. *Thomas* required that, absent actual knowledge of the deterioration, the defendant must be shown to have had at least sufficient knowledge as to put it under a duty to inspect before liability would attach. Under this standard the *Thomas* court found "no evidence from which notice could be properly inferred". In the instant case there is evidence that defendant knew or should have known of the flooding.[13] Moreover, there is evidence that defendant knew or should have known of the defective nature of the drainage system apart from knowledge of the flooding.[14]

---

[13] *See* footnote 9.

[14] *See* footnote 11 and accompanying text.

Because the trial court erred in finding *no evidence* of actual or constructive notice, we remand for a new trial and new findings of fact. Upon retrial, the trial court's findings should be sufficiently detailed so as to indicate the factual basis for the court's conclusions. GCR 1963, 517.1. *Ray v Mason County Drain Comm'r,* 393 Mich 294; 224 NW2d 883 (1975).

### III

Appellant also challenges the trial court's finding that the flooding was not due to any neglect in maintenance. Because we reverse on other grounds, we need not decide this question.

### IV

Finally, appellant contends that the trial judge displayed personal bias and prejudice. A review of the record indicates that there is no merit to appellant's assertion of judicial bias or prejudice on the part of the trial court.

Reversed and remanded for a new trial.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with RYAN, J.

BLAIR MOODY, JR., J., took no part in the decision of this case.