*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JANUARY 3, 2002**

LUCIA J. HANSON, Individually
and as Personal Representative
of the Estate of NELS THOMAS
HANSON, Deceased,

    Plaintiff-Appellee,

v                                              No. 117176

BOARD OF COUNTY ROAD
COMMISSIONERS OF THE COUNTY
OF MECOSTA, a Municipal
Corporation,

    Defendant-Appellant,

and

DALLAS JOSEPH SULLIVAN,

    Defendant.

_____

LUCIA J. HANSON, Individually
and as Personal Representative
of the Estate of NELS THOMAS
HANSON, Deceased,

    Plaintiff-Appellant,

v                                              No. 117973

BOARD OF COUNTY ROAD
COMMISSIONERS OF THE COUNTY

OF MECOSTA, a Municipal
Corporation,

    Defendant-Appellee,

and

DALLAS JOSEPH SULLIVAN,

    Defendant.

_____

PER CURIAM

The plaintiff's decedent died as a result of a motor vehicle accident on a road under the jurisdiction of defendant Mecosta County Board of Road Commissioners. Plaintiff sued both the other driver and the road commission, contending that the accident was caused in part by the defective condition of the roadway, and that this claim was within the highway exception to the governmental immunity statute. MCL 691.1402(1). Among other things, the plaintiff alleged that the slope of the road at the crest of a hill prevented drivers from seeing each other in time to avoid a collision. The circuit court granted summary disposition for the road commission, and, on rehearing, the Court of Appeals affirmed.

The plaintiff's allegations regarding the slope of the road present a claim of defective design, which is not within the road commission's duty to maintain and repair the highway under § 1402(1). We therefore affirm the decisions of the lower courts.

Plaintiff's decedent, Nels Hanson, was seriously injured in a head-on automobile collision on August 3, 1994, and died the following day. Decedent and the other driver, defendant Dallas Joseph Sullivan, were driving in opposite directions on 160th Avenue, an unpaved road in Mecosta County. It appears that the accident occurred as both vehicles were approaching the crest of a hill. Plaintiff maintained that Sullivan had crossed over the center line, though expert testimony developed during discovery suggested that both drivers may have done so.[1]

The essence of plaintiff's claim against the road commission was that the section of highway in question was unsafe because of the limited sight distance caused by the curvature of the hill. Specifically, plaintiff alleged that the road commission breached its duties by:

   a. Failing to keep the improved, travelled portion of 160th Avenue in a reasonable state of repair and reasonably safe and convenient for public travel;

   b. Failing to grade and profile 160th Avenue on the hill north of 22 Mile Road to conform to the applicable standards for sight distance;

   c. Maintaining the grade and profile of 160th Avenue on the hill north of 22 Mile Road so that southbound motorists did not have a safe sight distance as they climbed the hill;

---

[1] Plaintiff's claim against defendant Sullivan was resolved by acceptance of a mediation evaluation under MCR 2.403.

d. Failing to provide adequate warning to southbound motorists of the limited sight distance on the hill north of 22 Mile Road;

e. Failing to reduce the speed limit on 160th Avenue in recognition of the danger posed by the limited sight distance;

f. Failing to maintain 160th Avenue at a proper and adequate width given the limited sight distance caused by the grade and profile of the hill to provide motorists reasonable margins of error in their driving patterns and allow oncoming vehicles to safely pass each other at the crest of the hill;

g. Failing to provide proper or adequate shoulder area for emergency use by motorists climbing the hill; and

h. Carelessly and negligently breaching its statutory duties.

Among other defenses, the road commission contended that plaintiff's claim was barred because it was not within the highway exception to the governmental immunity statute, MCL 691.1402(1), which provides:

(1) Except as otherwise provided in section 2a, each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. The liability, procedure, and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21 of chapter IV of 1909 PA 283, MCL 224.21. The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for

4

vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

The circuit court granted summary disposition for the defendant, concluding that the highway exception did not apply and that the road commission was protected by governmental immunity. The court also rejected the plaintiff's nuisance theory.[2]

The plaintiff appealed to the Court of Appeals. The Court's initial decision affirmed in part and reversed in part.[3] The Court concluded that summary disposition was properly granted on the nuisance theory. However, it reversed on the highway exception. The Court relied on *Pick v Szymczak*, 451 Mich 607; 548 NW2d 603 (1996), for the proposition that the duty of highway maintenance includes a duty to erect adequate warning signs or traffic control devices at a "point of hazard" or a "point of special danger". The Court of Appeals said that the evidence submitted created a genuine issue of material fact about whether the hill crest was a point of danger to such an extent that the defendant had a duty to provide adequate warning signs.

_____

[2] That issue is not raised in the present appeals.

[3] Unpublished opinion per curiam, issued June 9, 2000 (Docket No. 217869).

5

On June 30, 2000, the defendant road commission filed an application for leave to appeal to this Court,[4] and on the same day the plaintiff filed a motion for rehearing in the Court of Appeals. While that motion was pending, on July 28, 2000, we decided *Nawrocki v Macomb Co Rd Comm,* 463 Mich 143; 615 NW2d 702 (2000), which clarified the law regarding the highway exception and overruled *Pick*. In light of *Nawrocki*, the Court of Appeals granted rehearing and reversed itself on the highway exception issue, affirming the circuit court's grant of summary disposition.[5]

The plaintiff has filed an application for leave to appeal from that decision.[6]

II

This case involves a review of a decision on a motion for summary disposition, and presents an issue of statutory construction, both of which we review de novo. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001); *Brown v Michigan Health Care Corp*, 463 Mich 368, 374; 617 NW2d 301 (2000).

---

[4] Docket No. 117176.

[5] Unpublished opinion per curiam, issued October 3, 2000 (Docket No. 217869). Judge JANSEN dissented from the highway exception portion of the opinion, believing that several of the allegations of plaintiff's complaint were sufficient to avoid governmental immunity even under the principles announced in *Nawrocki*.

[6] Docket No. 117973.

6

In *Nawrocki* and its companion case, *Evens v Shiawassee Co Rd Comm'rs*, we relied on *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), for the basic principle that the immunity conferred on governmental agencies is a broad one, with only narrowly drawn exceptions. 420 Mich 618. In rejecting Brian Evens' claim that the repair and maintenance obligation imposed by the highway exception includes a duty to install, maintain, repair, or improve traffic control devices, we examined the plain language of § 1402(1). While we agreed with *Pick* that the first sentence of the statutory clause creates a general duty to repair and maintain highways so they are reasonably safe and convenient for public travel, we noted that the duty with regard to state and county road commissioners is significantly limited, extending "only to the improved portion of the highway designed for vehicular travel." We explained:

> Nowhere in this language, or anywhere else in the statutory clause, do phrases such as "known points of hazard," "points of special danger," "integral parts of the highway," or "traffic sign maintenance" appear. *We are not persuaded that the highway exception contemplates "conditions" arising from "point[s] of hazard," "areas of special danger," or "integral parts of the highway," outside the actual roadbed, paved or unpaved, designed for vehicular travel.* None of these phrases or concepts appears anywhere within the provision of the highway exception. To continue to rely upon these phrases in determining the scope of the highway exception is contrary to the language selected by the Legislature in creating this

7

exception.  [463 Mich 176-177 (emphasis supplied).]

In light of those principles, we concluded that *Pick* must be overruled and the liability of state and county road commissions limited.  We said:

> The state and county road commissions' duty, under the highway exception, is only implicated upon their *failure to repair or maintain the actual physical structure of the roadbed surface, paved or unpaved*, designed for vehicular travel, which in turn proximately causes injury or damage. *Scheurman* [*v Dep't of Transportation*, 434 Mich 619, 631; 456 NW2d 66 (1990)].  A plaintiff making a claim of inadequate signage, like a plaintiff making a claim of inadequate street lighting or vegetation obstruction, fails to plead in avoidance of governmental immunity because signs are not within the paved or unpaved portion of the roadbed designed for vehicular travel.  Traffic device claims, such as inadequacy of traffic signs, simply do not involve a dangerous or defective condition in the improved portion of the highway designed for vehicular travel.

> Evens argues that the SCRC failed to install additional traffic signs or signals that might conceivably have made the intersection safer. Because the highway exception imposes no such duty on the state or county road commissions, we reverse the decision of the Court of Appeals and reinstate the trial court's grant of summary disposition to the SCRC.  [463 Mich 183-184 (emphasis supplied).]

IV

The majority of the plaintiff's allegations in this case involve the very sorts of warning and traffic control sign claims rejected in *Nawrocki*.  Such claims are clearly outside the purview of the highway exception, and we affirm the grant of summary disposition to the road commission with respect to these claims.

8

V

In addition to her claims involving inadequate warning, the plaintiff alleged that the defendant breached its duty by:

> b. Failing to grade and profile 160th Avenue on the hill north of 22 Mile Road to conform to the applicable standards for sight distance;

> c. Maintaining the grade and profile of 160th Avenue on the hill north of 22 Mile Road so that southbound motorists did not have a safe sight distance as they climbed the hill . . . .

The plaintiff argues that these allegations do involve the actual roadway designed for vehicular travel, thus avoiding the principles stated in *Nawrocki*. The Court of Appeals majority disagreed, holding that *Nawrocki* made clear that these types of claims do not implicate the statutory duty of the road commission to repair and maintain the roadbed:

> In the present case, there is no dispute that the actual roadbed surface itself was well maintained. Although plaintiff focused her argument on the limited sight distance where the crash occurred, the limited sight distance is not a road surface condition. Rather, it is a design feature that is a product of the terrain through which the road traverses. We believe that under the statute in question, as interpreted in [*Nawrocki*], the road commission's duty does not include a duty to correct design defects. Had the Legislature intended the correction of design defects to be included, it would have included such a requirement in the statutory language, and not assumed that such a requirement would be inferred under "maintenance and repair." As we observed in our original opinion, this design feature created a point of hazard that prior to [*Nawrocki*] created an issue of fact. In overruling *Pick*, *supra*, the Supreme Court instructed that the highway exception to governmental immunity does not contemplate conditions arising from points of hazard.

9

[*Nawrocki*], supra at 176-177. At best, plaintiff can only establish a point of hazard resulting from the limited sight distance at the crest of the hill where this occurrence happened, rather than a defect in the actual roadbed surface. [Slip op, pp 2-3.]

The dissenting Court of Appeals judge stated:

I cannot believe that the Legislature "intended" that a governmental entity responsible for designing and building a road would be immune from liability where the design itself is dangerous, but the road itself contained no "potholes" or other defects in the surface itself. [Slip op, p 2 (JANSEN, P.J.).]

This latter statement is contrary to the plain language of the statute, which carves out a limited exemption from governmental immunity and imposes on the state and county road commissions a narrow duty to "*repair and maintain* . . . the improved portion of the highway designed for vehicular travel . . . ." MCL 691.1402(1). Nowhere in the statutory language is there a duty to *install*, to *construct* or to correct what may be perceived as a dangerous or defective "*design*."[7]

---

[7] We disagree with dicta in cases such as *Killeen v Dep't of Transportation*, 432 Mich 1, 4-5; 438 NW2d 233 (1989), *Arnold v State Hwy Dep't*, 406 Mich 235, 237-238; 277 NW2d 627 (1979), and *Peters v State Hwy Dep't*, 400 Mich 50, 57; 252 NW2d 799 (1977), that the duty to maintain a road in a reasonably safe condition includes the duty to correct defects arising from the original design or construction of highways.

Although the dissent criticizes us for "dismissing" such cases, the dissent itself recognizes that "the primary issue in *Killeen* involved jurisdiction over a highway . . . ." *Post* at 3, n 5. The dissent further recognizes that the other cases, "did not specifically reach the design defect issue." *Id*. Yet, the dissent seems to believe that this Court should elevate conclusory statements of dicta, lacking in any

10

Moreover, it is not the province of this Court to make policy judgments or to protect against anomalous results. See *Nawrocki*, *supra* at 171, n 27.

We agree with the Court of Appeals majority and hold that the road commission's duty under the highway exception does not include a duty to design, or to correct defects arising from the original design or construction of highways. In the highway exception, the Legislature has said that the duty of the road commission is to "*maintain* the highway in reasonable repair so that it is reasonably safe and convenient for public travel." The statute further provides that the specific duty of the state and county road commissions is to "*repair and maintain*" highways. "Maintain" and "repair" are not technical legal terms. In common usage, "maintain" means "to

---

statutory analysis, above the plain words of the statute. However, our judicial task is to give meaning to the intent of the Legislature, as expressed in the statutory text. Accordingly, we decline to elevate such statements above the plain words of the highway exception.

Moreover, the dissent relies upon the doctrine of legislative acquiescence in stating that "[t]he Legislature's failure to change the language [in response to the dicta contained in the above decisions] suggests its intent to make a design defect actionable." *Post* at 6. However, even apart from the fact that these decisions involve dicta to which few legislative bodies would feel the need to respond, this Court has made it clear that the doctrine of legislative acquiescence "is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legislature's intent from its *words*, not from its silence." *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 596 NW2d 574 (1999) (emphasis in the original).

11

keep in a state of repair, efficiency, or validity: preserve from failure or decline." *Webster's Third New International Dictionary*, Unabridged Edition (1966), p 1362. Similarly, "repair" means "to restore to a good or sound condition after decay or damage; mend." *Random House Webster's College Dictionary* (2000), p 1119. We find persuasive the analysis of *Wechsler v Wayne Co Rd Comm,* 215 Mich App 579, 587-588; 546 NW2d 690 (1996) that

> [t]he Legislature thus did not purport to demand of governmental agencies having jurisdiction of highways that they improve or enhance existing highways, as by widening existing lanes or banking existing curves; that they augment existing highways, as by adding left-turn lanes; or that existing highways be expanded, as by adding new travel lanes or extending a highway into new territory. The only statutory requirement and the only mandate that, if ignored, can form the basis for tort liability is to "maintain" the highway in reasonable repair.
>
> Thus, . . . highway authorities are under no statutory obligation to reconstruct a highway whenever some technological safety advancement has been developed. Rather, the focus of the highway exception is on maintaining what has already been built in a state of reasonable repair so as to be reasonably safe and fit for public vehicular travel.

The plain language of the highway exception to governmental immunity provides that the road commission has a duty to repair and maintain, not a duty to design or redesign.

What the plaintiff sought in this case was to create a duty to design, or redesign, the roadway to make it safer by eliminating points of special danger or hazard. However,

12

there is no such design duty included in the statute. Nowhere in the statutory language are there phrases such as "known points of hazard" or "points of special danger." We emphasized in *Nawrocki* that the highway exception does not permit claims based on conditions arising from such points of hazard, and that the only permissible claims are those arising from a defect in the actual roadbed itself.[8] Accordingly, the plaintiff's claims that 160th Avenue was poorly designed and that it did not provide an adequate sight distance are insufficient to avoid governmental immunity.

Reasonable minds can differ about whether it is sound public policy to so limit the duty imposed on authorities responsible for our roads and highways. However, our function is not to redetermine the Legislature's choice or to independently assess what would be most fair or just or best public policy. Our task is to discern the intent of the

---

[8] In *Nawrocki*, we stated that the duty imposed upon state and county road commissions to "repair and maintain . . . the improved portion of the highway designed for vehicular travel" is implicated only when the alleged "*defect*," or "dangerous or defective *condition*," is located within the actual—roadbed itself. See *id.* at 161-162. We used the terms "defect" and "dangerous or defective condition" in *Nawrocki* to describe the status of the highway following a breach of the road commission's specific duty to "*repair and maintain*" the highway. The terms "defect" and "dangerous or defective condition" do not expand the statutory duty, but instead describe the general conditions that trigger the statutory duty to "repair and maintain." In other words, if the road commission's statutory duty is breached, it follows that the highway is in a state of *disrepair*, a synonym of which is "defect."

13

Legislature from the language of the statute it enacts. *Ross, supra* at 596. The Legislature has clearly limited the duty of the road commission to the repair and maintenance of the roadways, and the plaintiff's claim does not fall within that scope. Thus, we affirm the judgments of the Court of Appeals and the Mecosta Circuit Court.

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

LUCIA J. HANSON, individually
and as personal representative
of the estate of NELS THOMAS
HANSON, deceased,

    Plaintiffs-Appellees,

v                                No. 117176

BOARD OF COUNTY ROAD
COMMISSIONERS OF THE COUNTY
OF MECOSTA, a municipal
corporation,

    Defendant-Appellant,

and

DALLAS JOSEPH SULLIVAN,

    Defendant.
_____

LUCIA J. HANSON, individually
and as personal representative
of the estate of NELS THOMAS
HANSON, deceased,

    Plaintiffs-Appellants,

v                                No. 117973

BOARD OF COUNTY ROAD
COMMISSIONERS OF THE COUNTY
OF MECOSTA, a municipal
corporation,

    Defendant-Appellee,

and

DALLAS JOSEPH SULLIVAN,

    Defendant.

_____

KELLY, J. (*dissenting*).

I cannot agree with the majority's conclusion that the highway exception to governmental immunity[1] does not extend to a duty to design safe roadways.  I would reverse the Court of Appeals decision that plaintiff's design defect claim is barred by governmental immunity.

The majority approaches the issue of design defects as one of first impression, relying on *Nawrocki v Macomb Co Road Comm*,[2] and selected dictionary definitions of "maintain" and "repair."  It fails to discuss any case law dealing with governmental immunity and a highway's design defect, dismissing in a footnote three such examples as dicta. Without acknowledging that it is doing so, the majority is again overturning the longstanding precedent of this Court.

As recently as 1989, this Court held a governmental

---

[1] MCL 691.1402(1).

[2] 463 Mich 143; 615 NW2d 702 (2000).

entity that defectively designed a highway liable for a loss suffered as a result of the defect. *Killeen v Dep't of Transportation*, 432 Mich 1, 4-5; 438 NW2d 233 (1989). Moreover, in *Arnold v State Hwy Dep't,*[3] this Court explicitly stated: "[D]efects in the construction of highways [are] within the bounds of the [highway exception] statute." That conclusion echoed this Court's statement in *Peters v State Hwy Dep't,*[4] where it asserted: "[L]iability for defective highways is an express exception to the general sovereign immunity scheme created by statute," including a "defect in the design or construction of the highway." Until now, those decisions have not been called into question.[5]

More recently, this Court decided *Nawrocki, supra.* Admittedly, the majority opinion in *Nawrocki* stands for the

---

[3] 406 Mich 235, 237; 277 NW2d 627 (1979).

[4] 400 Mich 50, 57; 252 NW2d 799 (1977).

[5] The majority dismisses references to design defects "in cases such as" *Killeen, supra,* as dicta, meaning statements unnecessary to support the decision of the Court. Black's Law Dictionary (6th ed). Although the primary issue in *Killeen* involved jurisdiction over a highway, the conclusion that design defects are actionable was critical to the highway department's liability. *Id.* at 13. Moreover, this Court did not specifically reach the design defect issue in other cases only because no one disputed that defects in design and construction fall within the highway exception. See *Arnold, supra* at 237-238; *Peters, supra* at 55-57. This implies that the fact has been well accepted. Accordingly, even as dicta, this Court's repeated assertions that the highway exception includes design defects are persuasive.

3

proposition that the highway exception is limited to hazardous conditions of the actual road surface designed for vehicular travel. *Nawrocki*, *supra* at 176-177. However, with respect to governmental liability for highway design defects, I do not read that decision as overruling any of the cases cited herein.

A hazard on the traveled surface of a road can certainly be caused by a design defect, as this case demonstrates. Plaintiff has alleged that the county failed to create a safe surface for travel because the road was designed with too steep a grade. I would hold that plaintiff's design defect claim survives *Nawrocki* to the extent that she contends that the design defect rendered the road surface unsafe for travel.[6]

A logical reading of the highway exception supports that conclusion. The statute provides for a cause of action against a governmental agency for failure "to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel . . . ." It instructs agencies "having jurisdiction over a highway [to] *maintain the highway in reasonable repair so that it is reasonably safe and*

---

[6] Certainly, some roadways must traverse terrain making it impossible to avoid arguably unsafe conditions. However, whether a road was designed to be reasonably safe considering the terrain it must traverse is a question of fact for a jury.

4

*convenient for public travel*."  MCL 691.1402(1) (emphasis added).

The majority construes that language to mean that the government has no duty other than to keep a highway in its original condition.  However, implicit in a duty to *maintain* a reasonably safe highway is a duty to *design* a reasonably safe highway in the first place.  It mocks common sense to construe "maintain" to permit an agency that designed a dangerous roadway to escape liability as long as it keeps the road in that same condition.  The Legislature must have intended "maintain" to include "design and build."

In 1886, this Court examined a predecessor statute[7] to the current highway exception statute and reached the same conclusion as I do in this case.  The language of both statutes requires the governmental agency having authority over a particular highway to "keep" the highway in reasonable or good repair and "in a condition reasonably safe and fit for travel."  See *Carver v Detroit & Saline Plank-Road Co*, 61 Mich 584, 589; 28 NW 721 (1886).  Speaking for the Court then, Justice Champlin stated:

> I have no doubt that the defects in highways covered by the act of 1879 extend to defects in construction, as well as defects through omission to repair, and to neglect to keep the public highways in a condition reasonably safe and fit for

---

[7] 1879 PA 244.

5

travel by day or by night; and unless it is so kept, it constitutes a defect in the highway, for which, if injury results, an action will lie. [*Id.* at 590.]

I reaffirm that longstanding assessment. Also, I note that the Legislature could have used different language when it codified governmental immunity and specifically carved out the highway exception. Presumably it acted with knowledge of this Court's interpretation of the language it chose. The Legislature's failure to change the language suggests its intent to make a design defect actionable. See *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505; 475 NW2d 704 (1991); *Craig v Larson*, 432 Mich 346, 353; 439 NW2d 899 (1989).

On the basis of the highway exception's wording and this Court's longstanding precedent, I conclude that a highway design defect is actionable as an exception to governmental immunity. I would reverse the Court of Appeals decision to the contrary.

CAVANAGH, J., concurred with KELLY, J.