*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAMRA PICKTHORN and GARY WINFREY,

        Plaintiffs-Appellees,

v

OAKLAND COUNTY BOARD OF COUNTY
ROAD COMMISSIONERS,

        Defendant-Appellant,

and

OAKLAND COUNTY WATER RESOURCE
COMMISSION and NORTH POTOMAC GREEN
PROPERTY OWNERS ASSOCIATION, INC,

        Defendants.

UNPUBLISHED
February 20, 2026
11:36 AM

Nos. 371281;371457
Oakland Circuit Court
LC No. 2021-190110-CH

TAMRA PICKTHORN and GARY WINFREY,

        Plaintiffs-Appellees,

v

OAKLAND COUNTY BOARD OF COUNTY
ROAD COMMISSIONERS and OAKLAND
COUNTY WATER RESOURCE COMMISSION,

        Defendants,

and

NORTH POTOMAC GREEN PROPERTY
OWNERS ASSOCIATION, INC,

        Defendant-Appellant.

No. 371473
Oakland Circuit Court
LC No. 2021-190110-CH

-1-

Before: RIORDAN, P.J., and WALLACE and TREBILCOCK, JJ.

PER CURIAM.

Plaintiffs, Tamra Pickthorn and Gary Winfrey, contend culverts located on and near their property caused flooding, and that defendants, the Oakland County Board of County Road Commissioners (Road Commission) and the North Potomac Green Property Owners Association, Inc. (Association), are liable. At issue in these consolidated appeals are various rulings by the trial court declining to grant governmental immunity and finding issues of fact concerning inverse-condemnation and trespass claims. We reverse and remand for entry of judgment in defendants' favor.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This dispute concerns plaintiffs' home on Green Road in West Bloomfield Township, near the intersection of Orchard Lake and Walnut Lake Roads. Running through their property is a small stream that funnels into the Franklin branch of the Rouge River. Plaintiffs' house sits near their property's southern border alongside the stream, of which they were not aware when they acquired the property.

In the late 1960s, the Pulte Land Company began planning the subdivision in which the property is located and, consistent with the terms of the Declaration of Restrictions (Declaration), established defendant Association as a home owners association. As part of the development, in 1971, defendant Road Commission relocated Green Road from the property's eastern border to its western one. That alteration meant constructing a new Green Road culvert to the west and abandoning a previously used culvert on the property through which the stream passes. As a result, water now flows under the new Green Road culvert and across plaintiffs' property.

Plaintiffs purchased the property in 2011. Within a month, they noticed high water levels across the property and water damage in their basement. They complained to the Road Commission that the old culvert was "clogged [and] causing flooding." The Road Commission advised that the old culvert was not its "responsibility" and that its new Green Road culvert was "clear." Plaintiffs also "discussed the flooding issue" with the Association, which, according to them, "agreed to reimburse [them] for the cost of remedial work done to the creek area and the culvert at the back of [their] yard in an attempt to address the flooding from [the Association's] easement."

No action was taken on the abandoned culvert, and plaintiffs' property continued to flood. In 2018, for example, the flooding "increased to such an extent that [they] could not landscape or otherwise use [their] backyard as desired." Plaintiffs requested that West Bloomfield Township consider a drain project "to remedy the creek situation," identifying the culvert as "the primary issue" because it "blocks the flow of water traveling into the wetlands at the back of the property." After investigation, the Township determined that neither the Road Commission nor the Water Resource Commissioner controlled that culvert and stated that the Township could not assist in remediating plaintiffs' water issues. Instead, advised a Township engineer in July 2020, plaintiffs should just "remove the culvert and headwalls" after securing appropriate permits.

-2-

In the spring of 2021, plaintiffs filed a claim for damages with the Road Commission under MCL 224.21, asserting the Road Commission's drainage plan for their property caused damage. More specifically, they claimed that "the culverts on Green Road, and likely the culverts upstream under Orchard Lake Road, have not been sufficiently maintained so as to prevent the flooding that is now occurring on [their] property" and that "[t]he culvert located under the former Green Road location should have been removed at the time of the attempted abandonment." According to plaintiffs, the Road Commission "ignored" this claim for damages.

Oakland County then experienced two-to-three times normal rainfall levels that June and July, which caused significant stormwater damage to plaintiffs' property. Plaintiffs commenced this litigation in September 2021. The operative complaint asserts three counts against the Road Commission (declaratory relief determining it is obligated to maintain the culvert and its easements on plaintiffs' property, trespass, and inverse condemnation) and two against the Association (declaratory relief determining it is obligated to maintain its easements on plaintiffs' property and trespass).

At issue in this appeal is the trial court's denial of defendants' motions for summary disposition. The Road Commission appealed by right from the trial court's denial of its governmental-immunity defense. This Court then separately granted the Road Commission leave to appeal the trial court's denial of its motion for summary disposition on the inverse condemnation claim, and the Association leave to appeal its motion for summary disposition on the trespass claim.

## II. ROAD COMMISSION'S APPEAL IN DOCKET NO. 371281

In Docket No. 371281, the Road Commission contends it is entitled to immunity under the governmental tort liability act, MCL 691.1401 *et seq.*, and that its "highway exception" does not apply. Its argument has both procedural and substantive components. On the former, the Road Commission claims plaintiffs did not comply with MCL 691.1404(1)'s statutory-notice requirements. As for the merits, the Road Commission argues the highway exception does not apply because it did not have the duty to redesign the drainage system affecting plaintiffs' property. Because we agree with the Road Commission's merits-based arguments, we do not address its statutory-notice arguments.

## A. OVERVIEW OF GOVERNMENTAL IMMUNITY

The governmental tort liability act grants governmental agencies—like the Road Commission—immunity from tort liability when engaged in a governmental function. MCL 691.1407. This grant "is expressed in the broadest possible language—it extends immunity to all governmental agencies for *all* tort liability whenever they are engaged in the exercise or discharge of a governmental function." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 156; 615 NW2d 702 (2000). There are several exceptions, however, and one is at issue here—the so-called "highway exception" set forth in MCL 691.1402.

We begin with the act's definition of "highway": "a public highway, road, or street that is open for public travel. Highway includes a bridge, sidewalk, trainway, crosswalk, or culvert on the highway. Highway does not include an alley, tree, or utility pole." MCL 691.1401(c). A four-

sentence paragraph sets forth the "highway exception," which our Supreme Court has called "not altogether clear," "problematic," and "confusing for several reasons." *Duffy v Mich Dep't of Natural Resources*, 490 Mich 198, 206; 805 NW2d 399 (2011) (quotation marks and citations omitted).

"[T]he first and second sentences of the highway exception clause apply to all governmental agencies having jurisdiction over any highway." *Nawrocki*, 463 Mich at 159. Those provide:

> Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. [MCL 691.1402(1).]

These two sentences, commented our Supreme Court in *Nawrocki*, "describe" (1) "the basic duty imposed on all governmental agencies" ("to keep the highway in reasonable repair") and (2) "those persons who may generally recover damages when injured by a breach of the duty created by the *first* sentence." 463 Mich at 159.

The third and fourth sentences "address more specifically the duty and resulting liability of the state and county road commissions." *Id*. They state:

> The liability, procedure, and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21 of chapter IV of 1909 PA 283, MCL 224.21. [With an exception not applicable here], the duty of a governmental agency to repair and maintain highways, and the liability for that duty, *extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel*. [MCL 691.1402(1) (emphasis added).]

Referenced in the third sentence, MCL 224.21 provides that "[a] county shall keep in reasonable repair, so that they are reasonably safe and convenient for public travel, all county roads, bridges, and culverts that are within the county's jurisdiction, are under its care and control, and are open to public travel." MCL 224.21(2). To *Nawrocki*, this means "a county road commission's duty is coextensive with that owed by other governmental agencies . . . under the first two sentences of the highway exception clause." 463 Mich at 170.

And as for the fourth sentence, it "proceeds to narrowly limit the general duty to repair and maintain, created by the *first* sentence, " 'only to the improved portion of the highway designed for vehicular travel.' Further, this sentence expressly provides that the limited duty does *not* extend to 'sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.' " *Id*. at 161; see also *id*. at 170 ("[T]he fourth sentence . . . expressly limits the duty of the state and county road commissions, the breach of which permits avoidance

-4-

of governmental immunity[.]").  It thus "definitively limits the state and county road commissions' duty with respect to the *location* of the alleged dangerous or defective condition; if the condition is not located in the actual roadbed designed for vehicular travel, the narrowly drawn highway exception is inapplicable and liability does not attach."  *Id.* at 161-162.  Put differently, the highway exception creates a duty to maintain *only* the " 'traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.' "  *Grimes v Mich Dep't of Transp*, 475 Mich 72, 79; 715 NW2d 275 (2006) (concluding shoulders are not an improved portion of the highway designed for vehicular travel).

## B. PROCEDURAL HISTORY

In Counts I and II of the operative complaint, plaintiffs claim the Road Commission is responsible for maintaining the culverts on their property (both the newly constructed one under Green Road and the abandoned one) and a drain located within the easement across their property. They request declaratory relief under MCR 2.605 that the Road Commission is "obligated to maintain . . . the culverts and [its] easements on the Property such that the drain does not flood and threaten or cause damage therefrom" and allege that the "failure to maintain the culvert and [its] easement has resulted in consistent flooding on Plaintiff's Property," constituting a trespass.

In rejecting the Road Commission's assertion of governmental immunity, the trial court focused on the highway exception's express reference to MCL 224.21, and more specifically its requirement that counties keep "culverts" "in reasonable repair."  We owe that reasoning no deference, for this Court reviews de novo denials of summary-disposition motions predicated upon governmental immunity grounds.  *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2002).

## C. ANALYSIS

1.

The foundation of plaintiffs' claim is that the Road Commission improperly designed the old culvert and should have removed it when it relocated Green Road.  That is a fatal theory for governmental-immunity purposes for three independent reasons.

First, the public's travel safety animates the highway exception.  See MCL 691.1402(1) ("Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is *reasonably safe and convenient for public travel*.") (emphasis added); MCL 224.21(2) ("A county shall keep in reasonable repair, so that they are *reasonably safe and convenient for public travel*, all county roads, bridges, and culverts that are within the county's jurisdiction, are under its care and control, and are *open to public travel*.") (emphasis added).  That is plainly not what the old culvert on plaintiffs' property entails—it is neither open to the public nor facilitates travel.

Second, the public-safety duties imposed by MCL 691.1402 and MCL 224.21 make equally clear those highway, road, and culvert duties apply to governmental agencies having "jurisdiction over" or "under its care and control."  But as set forth, the Road Commission abandoned the old Green Road running across the eastern portion of plaintiffs' property in 1971,

and thus it is no longer within the Road Commission's jurisdiction, care and control. See MCL 224.18(3).

Third, a "road commission's duty under the highway exception does not include a duty to design, or to correct defects arising from the original design or construction of highways." *Hanson v Bd of Co Rd Comm'rs of Co of Mecosta*, 465 Mich 492, 502; 638 NW2d 396 (2002). Yet, the design of the old culvert—it being too small—is exactly what plaintiffs allege is wrong here. See also *Rajala v Houghton Co Bd of Rd Comm'rs*, unpublished per curiam opinion of the Court of Appeals, issued Aug 8, 2024 (Docket No. 366633), p 3 ("The record indicates that, since its construction, Rajala Road has been subject to seasonal flooding. Therefore, it is apparent that the flooding issue is a defect in the *design* of Rajala Road, not one caused by defendant's failure to keep it in reasonable repair.").

For these reasons, plaintiffs cannot avoid application of governmental immunity via the highway exception regarding the old culvert.

2.

Nor are we convinced that plaintiffs' faulting of the other culverts requires a different conclusion. First, the through thread of plaintiffs' claim for relief is the old culvert, so plaintiffs' alleged issues with the other culverts is secondary.

Second (and even if agree with the trial court's conclusion that a culvert falls within "the improved portion of the highway designed for vehicular travel" portion of MCL 691.1402(1)), governmental immunity applies to plaintiffs' allegations concerning those culverts as well. A "road commission's duty under the highway exception does not include a duty to design, or to correct defects arising from the original design or construction of highways." *Hanson*, 465 Mich at 502. And as it comes to water, "[a] defect that simply causes the accumulation of . . . water . . . is not sufficient to sustain an action under the highway exception." *Plunkett v Dep't of Transp*, 286 Mich App 168, 187-188; 779 NW2d 263 (2009). Rather, liability may lie against a road commission for failing to "maintain" a highway. *Hanson*, 465 Mich at 502. This means they are not obligated to refresh a design based on new technology or to correct a design flaw, and rather must just "maintain[] what has already been built in a state of reasonable repair . . . ." *Id.* at 503 (citation and quotation marks omitted).

For plaintiffs to avoid governmental immunity, they must point to record facts demonstrating the new Green Road Culvert proximately caused the flooding they complain about due to the Road Commission's failure to maintain it. *Id.* at 499. That is where they fall short, for everything in the record suggests it was operating as designed.

Plaintiffs resist this description of the record, contending there is evidence establishing "low flow" through another culvert downstream from plaintiffs' property (on Orchard Lake Road), contributing to the wetland area directly behind their property, and problems with the upstream culvert (on Old Dominion Road) "due to age" or "poor construct[ion]" leading the Road Commission to schedule it for maintenance. They, for example, suggest the Road Commission's engineer testified there might be "blockage" at the downstream culvert and that the Road Commission did not inspect it. But that is not what the deposition testimony reflects. Instead,

Todd White testified "there's no blockage because we have flow through the culvert" and that "[t]he low flow through the culvert is because of the heavy vegetation on the east—on the downstream end."

Plaintiffs also seek to undermine White's no-blockage conclusions, asserting the inspection methods the Road Commission utilized were not comprehensive and thus could have missed, for example, underwater blockages. That is speculative and does not create a fact dispute on this issue, for plaintiffs offered no evidence themselves demonstrating a failure to maintain these culverts. See *McNeill-Marks v Midmichigan Med Center-Gratiot*, 316 Mich App 1, 15-16; 891 NW2d 528 (2016) (noting that once a moving party satisfies its initial summary-disposition-motion burden "with documentary evidence," "the burden shifts to the nonmoving party to establish that a genuine issue of disputed fact exists," and that it must do so with more than "conjecture or speculation") (quotation marks and citation omitted).

3.

For these reasons, the trial court erred in concluding the highway exception to governmental immunity applies to plaintiffs' tort claims against the Road Commission.[1] We reverse and remand for entry of summary disposition in the Road Commission's favor on Counts I and II.

## III. ROAD COMMISSION'S APPEAL IN DOCKET NO. 371457

In Docket No. 371457, the Road Commission contends the trial court erroneously found two questions of fact precluding the entry of summary disposition on plaintiffs' inverse-condemnation claim: (1) that the Road Commission's actions substantially caused the decline of the property's value; and (2) that the Road Commission abused its governmental powers through alleged affirmative actions aimed at the property. Because we agree with the Road Commission that no record facts support plaintiffs' claim that the Road Commission's actions substantially caused the decline of the value of plaintiffs' property, we do not address the Road Commission's alternative grounds for reversal.

### A. OVERVIEW OF INVERSE CONDEMNATION

"The United States and Michigan Constitutions prohibit the taking of private property for public use without just compensation." *Krieger v Dep't of Environment, Great Lakes, and Energy*, 348 Mich App 156, 182; 17 NW3d 700 (2023), citing US Const, Am V; Const 1963, art 10, § 2. "A claim of inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken . . . even though no formal exercise of the power of

---

[1] To the extent plaintiffs assert the sewage disposal event exception set forth in MCL 691.1417(2) separately permits tort liability, that claim fails for at least two reasons—the Road Commission did not have the legal authority to correct the alleged defect on the old culvert since it was no longer their property as required by MCL 691.1417(3)(d), and plaintiffs cannot establish a link to proximate cause between the other culverts and their flooding as discussed in text, MCL 691.1417(3)(e).

eminent domain has been attempted by the taking agency." *Mays v Governor of Mich*, 506 Mich 157, 173; 954 NW2d 139 (2020) (quotation marks and citation omitted; omission in original).

Although there is no "precise formula" for "determining whether a governmental invasion or intrusion constitutes a taking of private property," *Wiggins v City of Burton*, 291 Mich App 532, 571; 805 NW2d 517 (2011) (quotation marks and citation omitted), "[a] plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages," *Mays*, 506 Mich at 173 (quotation marks and citation omitted). Such a plaintiff must also demonstrate "(1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Id*. at 174 (quotation marks and citation omitted). As relevant here, "[i]t is well settled that a governmental actor may cause a taking of private property by flooding the property or diverting excess surface water onto the property." *Wiggins*, 291 Mich App at 572.

## B. PROCEDURAL HISTORY

Plaintiffs tie their inverse-condemnation claim against the Road Commission to its failure to remove the old Green Road culvert upon abandonment of the former road, as well as modifications the Road Commission allegedly made to "an inlet to" the Orchard Lake Road culvert. However, their complaint only directly connects the latter to their claim of damages:

> 69. Upon information and belief, the Road Commission's modifications to the Orchard Lake Road culvert resulted in elevated water levels on both sides of the road and affected the water level of the wetland area to the east of the eastern of the [sic] culvert on Plaintiffs' Property.
>
> 70. Thus, the Road Commission's affirmative actions directed at Plaintiffs' Property was an abuse of its legitimate powers.
>
> 71. As a result of the Road Commission's actions, Plaintiffs Property has been damaged in the form of diminution in its value, and Plaintiffs have been deprived of their possession and use of their Property as a result of the flooding.

When seeking summary disposition, the Road Commission contended that the inverse-condemnation claim was barred by the statute of limitations, was unsupported by record evidence, and failed as a matter of law. The trial court disagreed, and we again owe no deference to that determination given the de novo review standard. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).[2]

---

[2] We note the trial court referenced the Road Commission's failure to maintain its easement, but that is outside the scope of plaintiffs' inverse-condemnation claim. Although they alleged that the Road Commission was obligated to maintain "their easement," their inverse-condemnation claim does not allege that the Road Commission failed to do so, nor that such a failure contributed to the flooding-related decrease in their property's value. Instead, they point to the Road Commission's alleged modification to "an inlet to a culvert beneath Orchard Lake Road" and, arguably, its failure to remove the culvert under old Green Road when it abandoned the road in 1971.

C. ANALYSIS

We begin and end with causation. To establish a claim for inverse condemnation, a plaintiff must demonstrate that "the government's actions were a substantial cause of the decline of the property's value . . . ." *Mays*, 506 Mich at 174 (quotation marks and citation omitted). Although the record contains evidence indicating that the flooding on their property decreased its value, nothing substantiates a causal link between that flooding and any of the nearby culverts, let alone a *substantial* one. *Id*.

In arguing to the contrary, plaintiffs merely reference the same evidence discussed in relation to governmental immunity we consider insufficient. That is, as to the currently operational culverts to which plaintiffs point, that evidence does not establish any causal connection between those culverts, the Road Commission, and the flooding. And as to the old culvert, the Road Commission abandoned it, along with former Green Road, in 1971, and plaintiffs have not provided any evidence or legal authority suggesting that the Road Commission nonetheless had a duty to continue maintaining the abandoned culvert, nor that their failure to do so (or any other alleged action relative to the old culvert) contributed to the flooding. And in fact, there is record evidence indicating that the old culvert is not the main contributor to the flooding, if a contributor at all, and that removal of that culvert would not alleviate the flooding.

Having failed to establish any causal connection between the Road Commission and the flooding, plaintiffs have likewise failed to demonstrate a connection between the Road Commission and the diminution in their property's value. Accordingly, the Road Commission was entitled to summary-disposition as to the inverse-condemnation claim.[3]

IV. ASSOCIATION APPEAL IN DOCKET NO. 371473

In Docket No. 371473, the Association raises three overarching arguments on appeal as to why it should have been granted summary disposition on plaintiffs' trespass and related declaratory relief claims. We resolve the appeal on the first ground—that plaintiffs, by failing to allege intentionality, did not plead a claim of trespass on which relief could be granted and thus the Association was entitled to summary disposition under MCR 2.116(C)(8).[4]

"[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land[.]" *Wolfenbarger v Wright*, 336 Mich App 1, 15; 969 NW2d 518 (2021) (quotation marks and citation omitted; first alteration in original). "In Michigan, recovery for trespass to land is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible

---

[3] Because plaintiffs cannot establish causation, we do not address the Road Commission's alternative arguments concerning proof of abuse of power aimed directly at their property and plaintiffs' alleged failure to bring their inverse-condemnation claim within the applicable statute of limitations.

[4] We therefore do not consider the Association's assertions that they were entitled to summary disposition under (C)(10) and that MCL 600.5805's three-year statute of limitations bars the claims.

object onto land over which the plaintiff has a right of exclusive possession." *Terlecki v Stewart*, 278 Mich App 644, 654; 754 NW2d 899 (2008) (quotation marks and citation omitted). Water is a physical, tangible object for purposes of trespass, *Wiggins*, 291 Mich App at 567, and "a defendant's unauthorized act of causing excess waters to flow onto another person's property constitutes a trespass," *id*. at 566. Of particular note here, actionable trespass requires that the intrusion be intentional. *Wolfenbarger*, 336 Mich App at 15.

Plaintiffs generally allege that a drain is located on their property somewhere within the 10-foot drainage easement, and that the Road Commission constructed two culverts in that easement area—(1) the new culvert, constructed at an unspecified time under Green Road, "upon the western portion" of the drainage easement; and (2) the old culvert, constructed sometime before 1971 "on the eastern portion" of the easement. They further allege that "significant" amounts of water ran "from the western culvert and through the [drainage] easement" on their property. Though plaintiffs admit that "flooding of the drain" had occurred within that easement "on numerous occasions" before they purchased their home in 2011, they claim the flow of water and associated flooding had since increased, damaging their property in various ways.

Regarding their claims against the Association, specifically, plaintiffs assert that their property is "located within the Association's subdivision" and that, "[u]pon information and belief, the Association is the owner of the [drainage] easement on the southern border of Plaintiffs' Property." They allege:

> 76. Plaintiffs will be harmed if this Court does not declare that the [Association] is obligated to maintain their easement[] on Plaintiffs' Property such that the drain does not flood and threaten or cause damage therefrom.

> 77. Plaintiffs seek a determination that the [Association] failed to maintain their easement such that they do not flood and cause damage to Plaintiffs' Property.

> 78. As the owner of the easement, the Association has an affirmative duty to maintain the easement in a safe condition to prevent injuries and damages, such as the flooding sustained by Plaintiffs.

> * * *

> 80. As described above, [the] Association's failure to maintain their [drainage] easement has resulted in consistent flooding on Plaintiffs' Property.

> 81. The flooding on Plaintiffs' Property from [the] Association's actions and failures to maintain their easement, constitute a trespass, harming and causing Plaintiffs damages.

These allegations are insufficient to state a claim for trespass against the Association.

To begin, their claims rest primarily, if not exclusively, on conclusory statements unsupported by factual allegations that cannot "suffice to state a cause of action." See *Black v Cook*, 346 Mich App 121, 129; 11 NW3d 563 (2023). Indeed, plaintiffs merely note that their property is within the subdivision the Association serves; assert their belief that the Association is

the drainage-easement holder and, thus, responsible for maintaining it; and allege that its failure to do so caused flooding on their property. Notably, they do not allege any facts establishing the Association's status as the drainage-easement holder, its obligation to maintain the easement and subsequent failure to do so, or how that failure caused excess water to intrude on their property. Plaintiffs give such little factual support for their failure-to-maintain allegation that it is unclear what the allegation encompasses—the easement area, generally, or the drain supposedly within the easement (to which plaintiffs have also failed to allege the Association has any connection).[5]

Even assuming plaintiffs provided enough factual support for their allegations that the Association held the drainage easement and caused flooding on plaintiffs' property through its failure to maintain that easement, the Association is nonetheless entitled to summary disposition under MCR 2.116(C)(8) because plaintiffs did not allege that it acted (or failed to act) with the intention of directing excess water onto plaintiffs' property. In this regard, this Court's decision in *Wolfenbarger* is instructive.

There, the plaintiffs brought a trespass claim against the defendant on the basis that his actions—the construction of a new road and the placement of a dirt pile on the defendant's property—increased the water on the plaintiffs' property, killing many of their trees. *Wolfenbarger*, 336 Mich App at 6-7. In their complaint, however, the plaintiffs merely alleged that the defendant's trespass was "done intentionally, recklessly, and wantonly when [the] Defendant knew that the Property and the trees belonged to [the] Plaintiffs and that [the] Defendant had no right to take these actions." *Id*. at 16. In concluding that the defendant was entitled to summary disposition under MCR 2.116(C)(8), the *Wolfenbarger* Court noted that, despite using the word "intentionally," the plaintiffs failed to properly allege that the defendant "intentionally caused water to flow onto [the] plaintiffs' property." *Id*. (quotation marks omitted). It reached this conclusion for two reasons: (1) "conclusory allegations are insufficient to state a cause of action; the cause of action must be supported by factual assertions," *id*.; and (2) to the extent the plaintiffs made any factual allegation at all, they "did not allege that [the] defendant undertook his actions with the intent to direct water onto [the] plaintiffs' property," *id*. at 17.

By the same reasoning, the Association is entitled to summary disposition under MCR 2.116(C)(8) relative to plaintiffs' trespass-related claims against it. Like the plaintiffs in *Wolfenbarger*, plaintiffs here did not allege that the Association acted with an intent to direct water onto plaintiffs' property. Indeed, plaintiffs here did not allege intentionality *at all*, whether in a conclusory manner or otherwise. Although this Court is required to "accept well-pleaded factual

---

[5] Comparing plaintiffs' allegations against the Road Commission to those against the Association reveals plaintiffs do not base their claims against the Association on an alleged failure to maintain the culverts. For example, plaintiffs sought a determination that the Road Commission, "having jurisdiction over Green Road and being the grantee of the certain easements on the Property, is obligated to maintain their easement and the culverts located thereon such that they do not flood and cause damage to Plaintiffs." But they requested a declaration that the Association was "obligated to maintain [its] easements on Plaintiffs' Property such that the drain does not flood and threaten or cause damage therefrom."

allegations as true and construe them in a light most favorable to the nonmoving party" when reviewing a motion under MCR 2.116(C)(8), it cannot "graft allegations a party has not made onto a pleading." *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 549; 942 NW2d 696 (2019).

Plaintiffs primarily disagree on the merits.[6]  In their view, the relevant inquiry is "not whether the act of flooding was intentional," but, instead, "whether (1) the [Association's] act of maintenance upstream (potentially causing the flooding) was intentional, or (2) the [Association's] act of refusing to maintain their easement (or compensate Plaintiffs for same as they had in the past), despite the ongoing flooding, was intentional." Although plaintiffs correctly assert that they need not prove that the Association intended to *flood* their property, their proposed inquiry departs from existing caselaw to the extent it fails to require an intentional *intrusion*.

Generally speaking, actionable trespass requires "simply an intent to be at the place on the land where the trespass allegedly occurred." *Mack v Natural Way, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367998); slip op at 4 (quotation marks and citation omitted). While the reason underlying the alleged intrusion is "irrelevant," the defendant must intend "to enter onto" the property in question. *Id*. Thus, "[i]f the intrusion was due to an accident caused by negligence or an abnormally dangerous condition, an action for trespass is not proper." *Terlecki*, 278 Mich App at 654 (quotation marks and citations omitted). Within the context of a trespassory intrusion of water, specifically, the defendant must have intended to direct water onto the plaintiff's property. *Wolfenbarger*, 336 Mich App at 17.

Applying these principles here, the relevant inquiry is not, as plaintiffs contend, merely whether the Association intentionally undertook maintenance upstream or failed to maintain the easement. Instead, we consider whether the Association did so *with the intention of directing excess water onto plaintiffs' property*. The excess water, after all, is the intrusion, *Wiggins*, 291 Mich App at 566-567, and the intrusion underlying an actionable trespass claim must have been intentional, *Wolfenbarger*, 336 Mich App at 15.

More generally, plaintiffs also dispute having failed to "plead or otherwise allege . . . the necessary facts and legal elements" of their trespass claim against the Association. They claim their amended complaint "expressly highlights that the [Association] conducted prior work but now had refused to maintain its easements (intentional acts)." On thorough review of plaintiffs' complaint, nothing expressly alleges intentionality or that the Association had previously undertaken work upstream that increased the flooding on plaintiffs' property. And regardless, even if plaintiffs' characterization of their allegations were accurate, those allegations would still fall short of stating an actionable trespass claim because they do not indicate that the Association

---

[6] Plaintiffs also claim, without any specificity, that the Association raises arguments in its appellant's brief that exceed the scope of its application for leave to appeal. We disagree. In both papers, the Association raised the intentional trespass issue under (C)(8), cited the controlling case, *Wolfenbarger*, and compared the sufficiency of the *Wolfenbarger* plaintiffs' complaint to that of plaintiffs' here. Though the Association undoubtedly expanded its analysis of this issue between its application and appellate brief, we cannot agree that this argument is beyond the scope of the appeal.

undertook the alleged acts *with the intention of directing water over plaintiffs' property*. Again, this Court cannot "graft allegations a party has not made onto a pleading." *Nyman*, 329 Mich App at 549.

In sum, the trial court erred in denying the Association's motion for summary disposition under MCR 2.116(C)(8).

## V. CONCLUSION

For these reasons, we reverse and remand for entry of judgment in favor of the Road Commission and the Association. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Randy J. Wallace
/s/ Christopher M. Trebilcock